UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**JONATHAN HARVEY,**

   Plaintiff,

v.     No. 4:25-cv-00291-P

**LHOIST NORTH AMERICA OF TEXAS, LLC,**

   Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant's Motion for Summary Judgment (ECF No. 42). Having considered the briefings and evidence of record, the Court concludes the Motion should be and hereby is **GRANTED**.

## BACKGROUND

This case arises from Plaintiff Jonathan Harvey's termination of employment from Defendant, Lhoist North America of Texas, LLC ("Lhoist"). Harvey was employed as a lime process operator in April 2022, initially working at the McKinney terminal and later transferring to the Celina terminal. As a process operator, Harvey's duties include assignments such as receiving dry lime, feeding it into a slaker, and mixing lime with water and other components to produce a lime slurry for customer delivery. Much of this work is to be performed outdoors or at off-site locations.

The summary judgment record reflects that Harvey received progressive discipline during 2023. This includes a "coaching discussion" following a January 2023 workplace incident, a written warning in June 2023 following a conflict at a customer site, a final warning after Harvey was reported to have "peeled out" of a parking lot, and termination, effective November 9, 2023, after another reported "peeling out" incident.

Lhoist's separation letter states that the company terminated Harvey after reviewing the November incidents and cites "progressive discipline regarding [Harvey's] conduct and disruptive behaviors since January 2023."

Regarding the January 2023 altercation, Harvey contends that he engaged in an altercation with a coworker, Preston Moreland, at the Celina terminal, during which Harvey alleges that Moreland called him a racial slur. Harvey contends that this incident was reported to his supervisor, Jesse Morris, but that HR did nothing beyond minor corrective action. Explaining that both he and Moreland received the same "coaching discussion."

Lhoist does not dispute that Harvey said he reported the incident to management, but points to record evidence that Harvey's contemporaneous written statement did not report that Moreland called him a racial slur, and instead, reflects a different accusation. One that claimed that *Moreland* reported *Harvey* for calling *Moreland* a racial slur.

Next, on June 21, 2023, Lhoist gave Harvey a written warning for a dispute between him and a customer because the customer prevented him from doing his work. Harvey explains only that he "acted appropriately in the situation." Lhoist responds that the warning resulted from Harvey saying something to the effect of, "If you keep shutting off the water, y'all can run the job and do the job yourself."

Next, Harvey contends that he made additional internal complaints to HR in the Summer of 2023. In particular, on August 31, 2023, he left a voicemail to HR asserting that "there are two employees at Celina who are showing favoritism and racially profiling others," and that he wanted to file a formal complaint. He further contends that HR representative Sonnenberg called him, and Harvey complained of "racial profiling, nitpicking, and favoritism," including that certain "special drivers" received better treatment.

Then, in October of 2023, Harvey contends that HR raised an allegation that he was using his truck to sell drugs. As a result, Harvey was subjected to a drug test, which came back negative. Lhoist responds

that the cited document actually reflects a complaint from another employee reporting concerns that Harvey possessed and sold drugs while at work, and disputes Harvey's characterization of the email.

Finally, on November 1, 2023, Harvey was reported for driving at excessive speed while leaving the Celina terminal in a company vehicle. This led to a final written warning. The record reflects that Harvey's testified that he accepted "ownership and accountability" for "speeding out of the terminal like that." Then just days later, on November 7, 2023, Harvey again "peeled out" of the parking lot. This time in his personal vehicle, prompting an investigation supported by multiple employee statements, including one by an employee of the same race as Harvey. Lhoist terminated Harvey effective November 9, 2023.

Harvey contends that the second "peeling out" incident was overstated, and his written statement reflects that his personal vehicle requires increased acceleration to navigate the roads leaving the Celina terminal. He apologized if his driving came across as aggressive.

Harvey filed this suit asserting claims for unlawful discrimination and retaliation under 42 U.S.C. § 1981. Lhoist moved for summary judgment on both claims. It is ripe for review.

## LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). A fact is "material" if it would affect a case's outcome. *Id.* at 248. Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* In assessing whether summary judgment is appropriate, the Court views evidence in the light most favorable to the nonmovant. *Cunningham v. Circle 8 Crane Servs., LLC*, 64 F.4th 597, 600 (5th Cir. 2023).

The Court may rely on any evidence of record but need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3); *see*

*generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (noting summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). But the Court need not mine the record for evidence supporting the nonmovant; the burden falls on the moving party to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

## ANALYSIS

Defendant seeks summary judgment on each of the claims levied by Mr. Harvey. The Court will address each in turn.

### A. Mr. Harvey fails to state a prima facie case of race discrimination, and there exists no genuine dispute of material fact that Lhoist's proffered reasons were mere pretext for discrimination.

Section 1981 prohibits race discrimination in the "making, performance, modification, and termination of contracts." 42 U.S.C. § 1981(b). Harvey's Section 1981 claims are evaluated under the *McDonnell Douglas* burden-shifting framework when, as here, the plaintiff relies on circumstantial evidence. *Wesley v. Gen. Drivers, Warehousemen & Helpers Loc. 745*, 660 F.3d 211, 213 (5th Cir. 2011). *McDonnell Douglas* requires a three-step burden-shifting framework for evaluating discrimination claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden initially lies with the plaintiff to establish a prima facie case. *Id.* It then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the [employment action]." *Id.* Finally, a plaintiff is afforded an opportunity to show through adequate evidence that the defendant's stated reasons were a mere pretext for discrimination. *Id.* at 804.

To establish a prima facie case of discrimination, an employee must demonstrate that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by

4

someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Willis v. Cleco Corp.*, 749 F.3d 314, 319–20 (5th Cir. 2014). Defendant does not dispute the first three elements. ECF No. 43 at 25.

As to the fourth element, whether an employee is "similarly situated" depends on whether that proffered comparator is in "nearly identical" circumstances. Two employees have nearly identical circumstances when they "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Harville v. City of Houston*, 945 F.3d 870, 875 (5th Cir. 2019) (citing *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)).

Harvey does provide a variety of comparators. Alleging that he was treated less favorably than Mr. Aguirre, Mr. Butler, Mr. Dearman, Mr. Moreland, Mr. Adams, Mr. Stanley, Mr. Owen, Mr. Purser, and Mr. O'Neal. ECF No. 51 at 20. Harvey merely cites to his own declaration as support. *See id.* In it, he does provide testimony that he was treated less favorably than other employees; however, there is no mention of those employees' violation histories. *See* ECF No. 50 at 200. For instance, Harvey states that "Lhoist often kept me at the Celina yard to keep me under closer supervision while non-Black operators were assigned easier tasks offsite with less scrutiny." *Id.* But never once mentioned whether any of these comparators enjoyed more freedom of work opportunity due to having no violation histories, or whether they enjoyed the comparative freedom *despite* having similar violation histories. Where a plaintiff provides only a conclusory explanation of why an individual is an appropriate comparator, that claim fails. *See Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641, 652 (5th Cir. 2025) (citing *Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 507 (5th Cir. 2024)). Consequently, no reasonable juror could find that any of the proffered comparators were nearly identical to Mr. Harvey because no evidence exists suggesting any "comparator" possessed a similar violation history. Thus, Harvey fails to establish a prima facie case of discrimination.

Alternatively, even if Harvey were to establish a prima facie case, he fails to overcome the pretext stage under *McDonnell Douglas*. But first,

the burden shifts the employer to establish a legitimate, non-discriminatory reason for the employment action. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). However, "[t]he employer's burden is one of production, not persuasion, and does not involve a credibility assessment." *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011) (citation omitted). Here, Defendant easily meets that production burden. Defendants provide evidence to show that Harvey was disciplined for an altercation with another employee and for clocking into work early without actually conducting any work. ECF No. 44-2 at 11. He was then disciplined a second time for an altercation with a Lhoist customer. *Id.* at 17. Then a third time for "peel[ing] out" of the parking lot on his way to work. *Id.* at 20. Finally he was terminated for once again speeding out of the parking lot in an unsafe manner. *Id.* at 25–35. Each incident stands as an independent, non-discriminatory reason for the employment action.

Thus, the burden lies with Harvey to establish that these reasons were mere pretexts for discrimination. *Alvarado*, 492 F.3d at 611. Harvey's Response focuses largely on his disagreement with Lhoist's proffered reasons for termination and *not* on whether those reasons were a pretext for discrimination. Where the employer relies on witness statements and other evidence, the plaintiff must do more than offer self-serving denial; he must produce evidence that the employer's reliance was unreasonable or in bad faith. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010). Here, multiple witnesses reported unsafe driving; Harvey conceded that his conduct could be perceived as aggressive; and he admitted wrongdoing in the prior, nearly identical incident. *See* ECF No. 44-3 at 47 ("I took full accountability of [speeding out of the yard]. I knew I was wrong for speeding out the company vehicle that time."); *id.* at 49. Consequently, no reasonable jury could infer from this record that Lhoist's reason is implausible in a way that supports an inference of race discrimination.

Harvey also relies upon the fact that he reported a coworker for using a racial slur. ECF No. 51 at 13. Seemingly suggesting that this report was the sole reason for Harvey's termination. *See id.* The Court does not minimize the seriousness of such an allegation. But the summary

6

judgment issue is whether Harvey has competent evidence that race caused the discipline and termination decisions at issue. The record reflects, and Harvey concedes, that the January 2023 alteration resulted in discipline for both participants, and Harvey offers no evidence tying the alleged slur to the later, independent disciplinary incidents in June and November 2023 or the decisionmakers' termination decision. *See id.* at 10. On this record, a reasonable jury could not find that these separate incidents were related, nor that race was somehow tied to the adverse employment action, because Harvey provides no facts to suggest such an inference is warranted.

Regardless, the Court does not assess whether the investigation was ideal or error-free, but whether any alleged shortcomings, viewed with the entire record, permit a rational inference of discrimination. *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 829 (5th Cir. 2022). Instead, to survive summary judgment at the pretext stage, a plaintiff must present "sufficient evidence to permit a rational inference that the proffered reason was pretext for discrimination." *Id.* at 830 (citing *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000)).

Under this standard, Harvey falls short. Much of his evidence consists of generalized assertions of discriminatory "profiling" or "favoritism," without specific underlying facts tied to the decisionmakers' reasons for the discipline and termination. Conclusory assertions do not create a triable issue. *See Owens*, 33 F.4th at 827 & n.10. Harvey's work assignment theory fares no better. To the extent that Harvey claims non-Black employees were treated better in assignments and scheduling, his deposition testimony reflects that he often accepted additional work to earn more pay and that he generally could not say how purported comparators were treated better. ECF No. 44-3 at 24, 38, 44. Even admitting that another black employee was shown "favoritism" by not being required to conduct power washing duties. *Id.* at 24. Where his later declaration contradicts his deposition on those points without explanation, the Court will not credit it to create a fact issue. *See Johnson v. Bd. of Supervisors of La. State Univ.*, 90 F.4th 449, 458 (5th Cir. 2024).

But again, "[t]he ultimate determination . . . is whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable factfinder could infer discrimination." *Crawford*, 234 F.3d at 902. Harvey wholly fails to provide evidence to create a fact issue here. The evidence before the Court amounts to nothing more than conclusory allegations and self-serving statements. There is no evidence that would suggest that Lhoist's justification for termination amounts to a pretext for discrimination. Employers are generally free to conduct their business as they see fit. Without any evidence tying the employment action here to discrimination, Harvey's claim cannot stand.

Thus, given the evidence before the Court and while making all reasonable inferences in Plaintiff's favor, the Court finds that no reasonable jury could determine that Lhoist's termination of Harvey was a pretextual reason for terminating his employment on the basis of protected characteristics.

### B. Mr. Harvey fails to state a prima facie case of retaliation, and alternatively, provides no evidence to create a genuine dispute as to pretext.

Harvey also asserts that Lhoist retaliated against him for various alleged protected actions. A retaliation claim is similarly analyzed under *McDonnell Douglas*. *Johnson*, 90 F.4th at 460. First, to establish a prima facie case of retaliation, Harvey must show that "(1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004).

Assuming without deciding that Harvey has satisfied the first two elements of retaliation, he still fails to show causation. "The mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case." *Swanson v. GSA*, 110 F.3d 1180, 1188 n.3 (5th Cir. 1997). Temporal proximity can support causation in some circumstances, but significant gaps—without other evidence of retaliatory intent—do not. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020); *Clark Cnty.*

*Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (recognizing that temporal proximity must be "very close"). Where, as here, intervening misconduct independently triggers progressive discipline, temporal proximity alone cannot suffice to establish causation.

Alternatively, Harvey fails to establish a genuine issue of material fact regarding the pretext stage of *McDonnell Douglas*. "[O]nce the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." *Swanson*, 110 F.3d at 1188. At this stage, that plaintiff must meet the heightened but-for causation standard, showing that the adverse action would not have occurred but for the retaliatory motive. *Willis v. Cleco Corp.*, 749 F.3d 314, 317–18 (5th Cir. 2014). Harvey's written discipline and termination followed intervening workplace incidents and progressive discipline. The January 2023 report by Harvey preceded the June 2023 discipline and the November 2023 final warning and termination by several months; standing alone, this is not close enough to establish causation. *Lyons*, 964 F.3d at 305; *Clark Cnty.*, 532 U.S. at 273–74. And to the extent Harvey relies on Fall 2023 complaints, he still must show more than temporal sequence; the record shows that Lhoist's actions were prompted by specific incidents of misconduct, and the law does not permit an employee who has complained to "disregard work rules or job requirements." *Swanson*, 110 F.3d at 1188 n.3.

Alternatively, even if Harvey could satisfy the prima facie elements, Lhoist has articulated a legitimate, non-retaliatory reason for the challenged actions: Harvey's behavioral and safety issues, including reports of unsafe driving. Harvey, therefore, must present competent evidence that the stated reasons are a pretext for retaliation. For the same reasons discussed above in the discrimination analysis—Harvey's reliance on conclusory assertions, and the absence of evidence that Lhoist acted in bad faith—he fails to raise a genuine dispute on pretext. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007); *Jackson*, 602 F.3d at 379.

Harvey's additional allegations do not alter the outcome. To the extent he challenges an October 2023 drug test as retaliatory, he offers no competent evidence regarding the Company's testing policy or that the test was administered for a retaliatory reason, and courts have held that similar testing does not constitute an adverse action on similar facts. *Brown v. San Antonio Food Bank*, No. SA-21-CV-507-OLG (HJB), 2023 WL 4408952, at *3 n.2 (W.D. Tex. Apr. 10, 2023), *report and recommendation adopted*, 2023 WL 4410516 (July 6, 2023), *aff'd*, No. 23-50564, 2024 WL 1300286 (5th Cir. Mar. 27, 2024); *Dornellien v. Masengale*, No. 4:21-cv-2900, 2023 WL 8283631, at *9 n.4 (S.D. Tex. Nov. 30, 2023). Even if the accusation by a co-employee regarding drug use was unfair or unsubstantiated, it does not create a fact issue regarding pretext. Responding to allegations of drug use through a drug test is an entirely legal avenue for addressing the situation, and no evidence on record suggests it was merely a pretext for discrimination. Mere suspicions, without more, is not enough to overcome summary judgment.

Plaintiff also identifies a sweeping list of other alleged "adverse actions," including "assigning excessive tasks," "assigning tasks not within his job description," "not allowing reasonable water breaks," unnecessarily monitoring his work closely," "targeting him for harassment and discipline," "withholding necessary training," "limiting his customer work assignments," "making him work longer hours," "cutting his hours," "having a hostile attitude towards him," and "falsely accusing him of drug use and drug dealing." ECF No. 51 at 22–23. But beyond Harvey's suspicions and generalized assertions, the record cited by Harvey contains no competent evidence that any of these day-to-day work grievances were imposed *because* Harvey engaged in a protected activity. At summary judgment, mere conclusory allegations and unsupported speculation do not create a genuine dispute of material fact. *See Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996). And to the extent Harvey relies on broad, conclusory declaration testimony untethered to specific facts or personal knowledge, the Lhoist's reply correctly notes that courts routinely reject

10

such "liturgical recitation[s] of legal conclusions," and cannot preclude summary judgment. *See Owens*, 33 F.4th at 827 & n.10.

Even if the Court assumes arguendo that some of these alleged actions could potentially qualify as "adverse" in the retaliation sense, these arguments still fail at the pretext stage. Lhoist has articulated a legitimate, non-retaliatory rationale for its disciplinary decisions and for the ultimate suspension of Harvey's employment. As stated previously, these include continued and persistent disruptive behaviors ultimately culminating in repeated unsafe driving incidents. The burden, therefore, rests solely with Plaintiff to present "substantial evidence" of pretext and that Lhoist would not have taken the challenged actions but for a discriminatory motive. *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020). Plaintiff simply does not meet that burden with a catalogue of workplace grievances and subjective beliefs. And where Plaintiff's argument reduces to simple disagreement with management's assessment or a request that the Court second-guess Lhoist's judgment, that is insufficient as a matter of law: "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *LeMaire*, 480 F.3d at 391.

Even crediting Harvey's version of events in full, the evidence would not permit a reasonable jury to conclude that retaliation, rather than Harvey's repeated workplace misconduct, caused the discipline and termination decisions. Summary judgment is therefore warranted on the retaliation claim. Finally, to the extent Plaintiff's briefing suggests a hostile work environment theory, that claim is not properly pleaded and is not before the Court.

## CONCLUSION

For the above reasons, the Court concludes that Summary Judgment should be and hereby is **GRANTED**. All claims are **DISMISSED with prejudice**.

**SO ORDERED** on this **3rd day of February 2026.**

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE